IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| I.M. by his next friend M.M., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-3453 |
| | § | |
| HOUSTON INDEPENDENT SCHOOL DISTRICT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In April 2018, a special education teacher found two special-needs students in a bathroom stall together at a Houston Independent School District high school. One admitted to sexually harassing the other. The issue is whether the District can be held liable for the harassment.

O., then 15 years old, admitted that he had invited I.M., then 16, into the stall to masturbate in front of him. The teacher who found them immediately told I.M.'s teacher, who took O. to the assistant principal. The assistant principal reported the incident to the principal and the District's Police Department. The students were separated, and the school notified I.M.'s parents.

Soon after the April 2018 incident, I.M. allegedly told his mother, M.M., that he had been assaulted by O. three previous times in a school bathroom, through acts of fondling, oral sex, and anal penetration. I.M. did not, and has not, stated precisely when the previous assaults occurred. I.M. allegedly told his teacher of the assaults each time, but she did nothing until the other teacher found I.M. and O. in the bathroom. (Docket Entry No. 23 at ¶ 13).

In October 2020, I.M., by his next friend, M.M., sued the District under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, and sued I.M.'s teacher under 42 U.S.C.

§ 1983. The District and I.M.'s teacher moved to dismiss, and the court granted the motion as to the § 1983 claim against the teacher. (Docket Entry No. 28).

Discovery proceeded on the Title IX claim against the District. Because the District had failed to file an answer, I.M. moved for partial summary judgment on that basis. (Docket Entry No. 36). The court granted the District's motion for leave to file an answer, (Docket Entry No. 53), making I.M.'s motion for partial summary judgment moot.

The District has now moved for summary judgment. (Docket Entry No. 35). I.M. responded, the District replied with objections to the evidence I.M. submitted in his response, and I.M. responded to the objections. (Docket Entry Nos. 40, 47, 48). The District and I.M. also filed a supplemental reply and response. (Docket Entry Nos. 55-1, 58). Based on the motion, response, reply, supplemental briefs, and the applicable law, the court grants the District's motion for summary judgment. Final judgment is entered separately. The reasons are explained below.

**I.      Background**

The incident that resulted in this lawsuit is not in dispute. During the 2017-2018 school year, I.M. was 16 years old and in eleventh grade at Cesar Chavez High School, part of the Houston Independent School District. (Docket Entry No. 35 at 8; Docket Entry No. 40 at 9). I.M. is intellectually disabled and received special education services. (Docket Entry No. 35 at 8; Docket Entry No. 35-9; Docket Entry No. 40 at 9).

As a student with disabilities, I.M. had an Individualized Education Plan. The Admission, Review, and Dismissal Committee in charge of preparing his Plan included his mother (M.M.), Assistant Principal Courtney Bensch, Assistant Principal Reesa Turner, and I.M.'s special education teacher, Belinda Swearer, among others. (Docket Entry No. 35-9 at 38; Docket Entry No. 40 at 9). To increase I.M.'s independence, his Committee agreed that he could use the boys'

2

bathroom by himself as long as a school employee checked on him in two to three minute intervals. (Docket Entry No. 35 at 9; Docket Entry No. 35-39 at 14, 35; Docket Entry No. 40 at 9).

On the morning of April 13, 2018, Patrick Scott, a special education teacher, found I.M. and O. in a bathroom stall together, brought them to their teacher, Swearer, and reported the incident to her. (Docket Entry No. 35-12; Docket Entry No. 40 at 10–11). Swearer in turn brought O. to Assistant Principal Bensch. (Docket Entry No. 35-5 at ¶ 4; Docket Entry No. 35-12; Docket Entry No. 40 at 11). O. told Assistant Principal Bensch that he saw I.M. at the urinal, invited I.M. into the bathroom stall with him, and began to masturbate in front of I.M. (Docket Entry No. 35-11 at 35; Docket Entry No. 35-12; Docket Entry No. 40 at 10). O. denied physically touching I.M. (Docket Entry No. 35-11 at 35; Docket Entry No. 35-12). After Assistant Principal Bensch spoke with O., she spoke with I.M., who was noncommunicative. (Docket Entry No. 35-11 at 33).

Assistant Principal Bensch reported the incident to Principal Sanchez, Officer Valdez from the District's Police Department, and the school's special education chair. (Docket Entry No. 35-11 at 35–36). Swearer proposed ways to separate the two students in the future, which Assistant Principal Bensch approved. (Docket Entry No. 35-6). Assistant Principal Bensch and Swearer also discussed the incident with M.M. on the day it occurred. (Docket Entry No. 35-11 at 34; Docket Entry No. 35-14 at 34–37). I.M.'s later testimony largely confirmed O.'s account of the incident: O. showed I.M. his "wee wee" in the bathroom, and O. physically touched I.M., but only on the shoulder. (Docket Entry No. 35-13 at 13–15).

The parties dispute whether the April 13, 2018, incident between O. and I.M. was the first and only, or whether there were three earlier encounters between O. and I.M. that I.M. had promptly reported to Swearer each time. M.M. testified that the weekend after the April 13, 2018, incident, I.M. told her that he had been sexually assaulted by O. (Docket Entry No. 35-14 at 52–

3

58). The following Tuesday, I.M. was examined at Texas Children's Hospital, which revealed an abrasion in the perianal area consistent with trauma. (Docket Entry No. 40-7 at 3–4). During a May 2018 interview between I.M. and Clara Rivers, a forensic interviewer at the Harris County Children's Assessment Center, I.M. told Rivers that on three separate earlier occasions, O. had put his "wee wee" in I.M.'s "butt," and that blood came out. (Docket Entry No. 40-5; *see also* Docket Entry No. 40-2 at 22–23). I.M. told Rivers that he had reported each incident to Swearer right after it happened. (Docket Entry No. 40-5; *see also* Docket Entry No. 40-2 at 23). After the April 13, 2018, incident, O. was also interviewed by a representative of the Children's Assessment Center. O. described having anal sex with another special-needs student, R. (Docket Entry No. 40-2 at 25). O. stated that he did the same thing to I.M. (*Id.*).

Swearer has testified that she had a good relationship with I.M., could effectively communicate and converse with him, and that he did not tell her before April 13 that he was inappropriately touched or harassed by another student. (Docket Entry No. 35-5 at ¶ 5; Docket Entry No. 35-10 at 7, 31, 35).

O. and I.M. have made inconsistent statements. Both O. and I.M. described acts of sodomy in their interviews with the Children's Assessment Center. But O. denied ever assaulting I.M. when speaking with the District's police, and I.M. stated in his deposition that he saw O.'s genitals only one time. (Docket Entry No. 35-11 at 41–42; Docket Entry No. 35-13 at 16–17).

I.M.'s grades remained the same after the April 2018 incident, but M.M. testified that before then, he began refusing to go to school and started having bowel accidents. (Docket Entry No. 35-14 at 17–18, 34). I.M. has since graduated from high school. (Docket Entry No. 35-13 at 7).

## II. Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citations and internal quotation marks omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (citation and internal quotation marks omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

**III.     The Summary Judgment Evidence**

In support of its motion, the District submits the following summary judgment evidence:

- affidavits from the District's Title IX Coordinator Kaneetra Bass, special education teacher Belinda Swearer, and Assistant Principal Bensch, (Docket Entry Nos. 35-2, 35-5, 35-7);

- the District's Board Policies on Discrimination, Harassment, and Retaliation, (Docket Entry Nos. 35-3, 35-4);

- emails between Swearer and Assistant Principal Bensch, (Docket Entry No. 35-6);

- a Child Protective Services Report, (Docket Entry No. 35-8);

- I.M.'s Individualized Education Plan Report, (Docket Entry No. 35-9);

- deposition testimony from Swearer, Assistant Principal Bensch, I.M., and M.M., (Docket Entry Nos. 35-10, 35-11, 35-13, 35-14);

- an incident statement from Swearer, (Docket Entry No. 35-12);

- the District's Police Department Report, (Docket Entry No. 35-15); and

- the District's Employee Relations Department Investigation Report, (Docket Entry No. 35-16).

In support of his response to the District's summary judgment motion, I.M. submits the following summary judgment evidence:

- excerpts of deposition testimony by Swearer, (Docket Entry No. 40-1);

- the District's Police Department Report, (Docket Entry No. 40-2);

- the District's Employee Relations Department Investigation Report, (Docket Entry No. 40-3);

- I.M.'s Individualized Education Plan, (Docket Entry No. 40-4);

- the forensic interview of I.M. at the Harris County Children's Assessment Center, (Docket Entry No. 40-5);

- I.M.'s First Amended Complaint, (Docket Entry No. 40-6);

- a medical record from the Texas Children's Hospital, (Docket Entry No. 40-7);

- an affidavit by Dr. Matthew Barns, (Docket Entry Nos. 40-8);

- Multidisciplinary Team Working Protocols of the Children's Assessment Center, (Docket Entry No. 40-9); and

- a Therapy Services Referral Form from the Children's Assessment Center, (Docket Entry No. 40-10).

I.M. and the District have raised several evidentiary disputes. I.M. argues that because the District submitted its Employee Relations Misconduct Investigation Report and Police Department Report, (Docket Entry Nos. 35-15, 35-16), without expressly stating the limits of their admission as summary judgment evidence, the District has waived any objection to I.M.'s reliance on hearsay statements within the reports. Because the police report includes statements summarizing I.M.'s forensic interview with the Children's Assessment Center, I.M. also argues that the District cannot now object to the statements made in I.M.'s interview itself. (*See* Docket Entry No. 40-5).

The District responds that it submitted the reports to show that allegations were investigated promptly—not for the truth of the contents—and that it has not waived its hearsay objections. The District objects to I.M.'s reliance on his own interview statements as inadmissible hearsay. Last, the District objects to I.M.'s reliance on the Children's Assessment Center Multidisciplinary Working Protocols, (Docket Entry No. 40-9), because the document was not produced during discovery.

The District did not waive or forfeit its objections to the unlimited use of the Employee Relations Misconduct Investigation Report, the Police Department Report, or to the statements in I.M.'s forensic interview. Under Rule 105 of the Federal Rules of Evidence, "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for

7

another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly."

The court grants the District's objections to the use of the hearsay statements in the Employee Relations Misconduct Investigation Report and the Police Department Report. These reports are admitted to show that the District investigated promptly. The court overrules the District's objections to I.M.'s forensic interview statements as summary judgment evidence. "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (alteration in original) (quoting 11 MOORE'S FEDERAL PRACTICE-CIVIL ¶ 56.91 (2017)).

I.M.'s statements in his forensic interview, (Docket Entry No. 40-5), summarized in the District's police report, (Docket Entry Nos. 35-16, 40-2), will be considered for the truth. I.M. has shown that predicates exist for a hearsay exception to apply. Hearsay is admissible when it consists of "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." FED. R. EVID. 803(4). I.M. was taken to the Children's Assessment Center for treatment after a physical examination showed a perianal abrasion consistent with trauma. After his interview, the Children's Assessment Center referred I.M. to therapy services. (Docket Entry No. 40-10). *See also Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991) ("[S]tatements, which ordinarily may not be admitted under Rule 803(4), may be admitted in a child abuse case: physicians must consider not only the physical harm

8

involved but also the psychological and emotional injuries that accompany the crime of child abuse."); *United States v. Kappell*, 418 F.3d 550, 557 (6th Cir. 2005) ("[A] young child—even one who was four years old and incompetent to testify in a sexual abuse case—has a strong motive to make true statements for the purposes of diagnosis or treatment." (internal quotations omitted)).[1]

The District's objection to the Children's Assessment Center Multidisciplinary Working Protocols, (Docket Entry No. 40-9), is moot. The exhibit does not affect the court's analysis or conclusion.

## IV. Analysis

The District argues that I.M.'s Title IX claim fails as a matter of law because I.M. was not sexually assaulted on April 13, 2018; he cannot show that he was subject to severe and pervasive harassment depriving him of educational benefits; the District did not respond to the incident with deliberate indifference; and no appropriate District official knew of harassment by O. before April 13, 2018. I.M. does not argue that this one incident would constitute severe and pervasive harassment, or that the District's response to the incident was deliberately indifferent. I.M. argues that factual disputes exist material to determining whether O. sodomized I.M. three times before

---

[1] I.M. has also submitted sworn expert testimony that the Children's Assessment Center interview protocols and steps "represent a best practice for such interviews," and that I.M.'s forensic interview was close enough in time to the events alleged to be reliable. (Docket Entry No. 40-8). I.M. could establish predicates for I.M.'s statements under the residual hearsay exception at trial. *See* FED. R. EVID. 807(a) ("[A] hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804 [if]: (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."). *See also* 1 STEPHEN A. SALTZBURG, MICHAEL M. MARTIN, & DANIEL J. CAPRA, FEDERAL RULES OF EVIDENCE MANUAL § 807.02[2] (12th ed. 2019) ("Courts in states without a residual exception have often admitted statements of child-victims under [the Rule 803(2) and Rule 803(4)] exceptions, even where the declarant was not excited or seeking treatment; these courts undertake a residual-type analysis and admit the statement when it is trustworthy under the circumstances.").

the April 13, 2018, incident, and that if proven, three acts of sodomy would be severe and pervasive harassment. I.M. also argues that there are factual disputes as to whether I.M. Swearer knew about each incident at the time, and whether Swearer is an "appropriate person" under Title IX.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). "This provision of Title IX may be enforced in a private lawsuit for monetary damages." *Carmichael v. Galbraith*, 574 Fed. Appx. 286, 289 (5th Cir. 2014) (per curiam) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)).

"A school district that receives federal funds may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit, and (5) the district was deliberately indifferent to the harassment." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (citation and internal quotation marks omitted). Schools "are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999); *see also I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 368–69 (5th Cir. 2019).

The "express remedial scheme under Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation." *Gebser*, 524 U.S. at 290. "[A] damages

10

remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id.*

The District maintains that that April 13, 2018, incident by itself was not severe, pervasive, and objectively offensive harassment, and that its response was not deliberately indifferent. I.M., however, does not argue that the District's response to the April 13 incident was clearly unreasonable or that the April 13 incident alone suffices to show that the District is liable under Title IX. I.M. claims that he was sodomized by O. at least three times before April 13, 2018, and that I.M. told Swearer about each incident, but that she did nothing.

The District does not dispute that, if true, three acts of sodomy in addition to the April 13 incident show severe, pervasive, and objectively offensive harassment, and that failing to respond to reports of the acts would amount to deliberate indifference. Because I.M. has submitted evidence creating factual disputes material to determining whether he had been assaulted by O. three previous times and whether I.M. told Swearer, (*e.g.*, Docket Entry Nos. 40-5, 40-7), the issue is whether Swearer can be considered an "appropriate person" for the purpose of holding the District liable.

Courts have analyzed the standard for an "appropriate person" whose knowledge can be imputed to a school district receiving federal benefits. *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 659 (5th Cir. 1997). "At one end of the spectrum, liability might lie only when a member of the school board actually knows of the abuse and fails to take prompt remedial action." *Id.* Under that rule, "a school district would virtually never face penalties for sexual abuse of students unless school board members themselves intended the harm." *Id*. "At the other end of the spectrum, liability might lie whenever any school employee other than the perpetrator has

11

actual knowledge of the abuse and fails to take prompt remedial action." *Id.* That rule "would vitiate the premise that has guided [the Fifth Circuit's] analysis of Title IX sexual-abuse cases: that Title IX creates liability for school districts only when the school district intentionally breaks the strings attached to those funds." *Id.*

The Fifth Circuit follows a rule in the middle. A district has imputed knowledge when a school official has "actual knowledge of the abuse" and "the power to take action that would end [the] abuse." *Id.* at 660. This rule serves to "omit[] the bulk of employees, such as fellow teachers, coaches, and janitors, unless the district has assigned them . . . the power to halt the abuse." *Id.* Legal requirements to report abuse to superiors or law enforcement are not enough to show that a school employee has been assigned the power to halt abuse and take corrective measures. *Id.* at 661 (citing TEX. FAM. CODE § 261.101(a), (b)). "In order to qualify as a supervisory employee whose knowledge of abusive conduct counts as the district's knowledge, a school official must at least serve in a position with the authority to repudiate that conduct and eliminate the hostile environment on behalf of the school district." *Id.* (citation, emphasis, and internal quotation marks omitted).

Determining who is an appropriate person is a fact-specific and district-specific inquiry.[2] *See S.M. Sealy Indep. Sch. Dist.*, C.A. No. H-20-705, 2021 WL 1599388, at *5 (S.D. Tex. Apr.

---

[2] The current U.S. Department of Education regulations provide that "[a]ctual knowledge means notice of sexual harassment or allegations of sexual harassment to a recipient's Title IX Coordinator *or* any official of the recipient who has authority to institute corrective measures on behalf of the recipient, *or* to any employee of an elementary and secondary school." 34 C.F.R. § 106.30(a) (emphasis added). The Department explained in its preamble to the rule that by "including notice to any elementary or secondary school employee" in the concept of "actual knowledge," the rule "furthers the Department's policy goals of ensuring that elementary and secondary schools respond whenever a school employee knows of sexual harassment or allegations of sexual harassment." 85 Fed. Reg. 30026, 30033–34. Although the rule provides that notice to any secondary school employee is sufficient to establish "actual knowledge" under Title IX, this rule was not effective until August 14, 2020, and the rule does not apply retroactively. 85

23, 2021) (whether a high school coach could take corrective action to stop alleged harassment was a fact issue); *see also J.B. v. Klein Indep. Sch. Dist.*, No. 4:19-cv-0210, 2020 WL 813020, at *8 (S.D. Tex. Feb. 28, 2020) ("The Court has found no authority for the proposition that a teacher, or any school employee below the level of an assistant principal, cannot be an 'appropriate person' as a matter of law. Who qualifies as an 'appropriate person' is generally a question of fact." (citations omitted)); *E.M. by J.M. v. Austin Indep. Sch. Dist.*, No. A–17–CA–387 LY, 2018 WL 627391, at *6–7 (W.D. Tex. Jan. 30, 2018) (a school counselor was not an appropriate person because she did not have the authority to address discrimination complaints or take corrective measures).

I.M. points to the Texas Education Code to argue that Swearer was assigned the authority under Texas law to take measures that would stop the abuse that I.M. alleges. The Texas Education Code gives teachers the authority to "send a student to the campus behavior coordinator's office to maintain effective discipline in the classroom." TEX. EDUC. CODE § 37.002(a). Teachers must also remove from the classroom and send to the principal a student who has assaulted or sexually assaulted another student. TEX. EDUC. CODE §§ 37.002(d), 37.006(a)(2)(B), 37.007(a)(2)(A). As the District points out, this authority is more limited when a teacher oversees students with disabilities. The Texas Education Code provides that "[t]he placement of a student with a disability who receives special education services may only be made by a duly constituted admission, review, and dismissal committee." TEX. EDUC. CODE § 37.004(a); *but see* 34 C.F.R. § 300.530(b)–(c) (school personnel may not remove a student with a disability from a placement for more than

---

Fed. Reg. 30026, 30028; U.S. Dep't of Education, Office for Civil Rights, *The Title IX Rule Is Effective on August 14, 2020, and Is Not Retroactive*, (Aug. 5, 2020), https://tinyurl.com/7z6p25zj.

10 consecutive school days for a school rule infraction, but this does not apply when the behavior leading to the infraction "is determined not to be a manifestation of the child's disability"). Although the authority is more limited, the Texas Education Code does not appear to limit Swearer's ability, for example, to send a special education student to Assistant Principal Bensch if a rule infraction occurs, if the removal is temporary and not contrary to a student's Individualized Education Plan.

Swearer's authority to remove students from her classroom in limited instances is consistent with her testimony and the testimony of Assistant Principal Bensch. Swearer testified that she may take disciplinary action for rule infractions that occur within her classroom, but for rule infractions or other behavior outside of the classroom, she must turn the incident over to the school administration. (Docket Entry No. 35-10 at 37–38). Assistant Principal Bensch testified that a special education teacher like Swearer could remove a student from class and bring them to Assistant Principal Bensch in the case of a rule infraction, but that further action would depend on the student's Individualized Education Plan. (Docket Entry No. 35-11 at 21–22). Assistant Principal Bensch did not differentiate between infractions occurring in or out of the classroom.

Swearer and other District employees must report harassment of a student, whether in or out of the classroom. According to the District's Board Policies, only principals, assistant principals, and other District administrators, such as the Title IX coordinator, may institute discipline for reported sexual harassment. (Docket Entry No. 35-2 at ¶ 6; Docket Entry No. 35-4). But a duty to report harassment that a District teacher knows about and ignores is not enough to impute that knowledge to the District or make it liable for failing to intervene promptly. *See Rosa H.*, 106 F.3d at 661.

14

I.M. points out that because Swearer was the case manager for I.M.'s Individualized Education Plan, she had the additional duty of ensuring that his Plan was followed. (Docket Entry No. 40-1 at 13). As case manager, Swearer could also recommend changes to I.M.'s Plan to his Admission, Review, and Dismissal Committee. (*Id.*). Swearer had no authority to unilaterally make changes to I.M.'s Plan.

In sum, accepting all facts and drawing reasonable inferences from those facts in favor of I.M., the record evidence shows that Swearer had a duty to report incidents of sexual assault that she learned of, had the authority to send a special education student like I.M. or O. to Assistant Principal Bensch in the case of a rule infraction, and could recommend changes to I.M's Individualized Education Plan. This is not enough to support a finding that Swearer was assigned the authority to rectify the harassment I.M. allegedly reported to her.

"[F]or the district to have knowledge, it is not enough that *any* employee knew of the harassment; it must be someone authorized to rectify it." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 359 (5th Cir. 2020) (emphasis in original). In *Edgewood*, a school peace officer knew that a student was being abused by another teacher. *Id.* Although the school peace officer "had authority to monitor the criminality of [school district] personnel" and "had authority to arrest [the teacher]," the Fifth Circuit held that the peace officer could not be considered an "appropriate person" under Title IX because he had no power to take tangible employment actions against the teacher. *Id.* at 359–60. Even if the peace officer arrested the teacher, that would not have eliminated the abusive environment if the teacher returned to work after being released or posting bail. *Id.* at 360–61. The peace officer could not "reformulate district sexual harassment policies or publicly 'repudiate the conduct.'" *Id.* at 361 (citation omitted). The fact that the officer "had the duty and authority to take action to stop crimes occurring on campus" was not enough to make

15

him an "appropriate person" under Title IX, because then "nearly every district employee" who has a reporting obligation would be an "appropriate person." *Id.*

There is no record evidence that shows Swearer was assigned authority to take the kind of official action on behalf of the District that would have ended the abuse I.M. allegedly reported to her. She could not make the decision to initiate an investigation, impose increased supervision of I.M. or O. during restroom breaks under their Plans, require that they use different restrooms, remove one of them from the school, rearrange their schedules to ensure they remained separated throughout the day, or mandate that either or both attend counseling. Because Swearer cannot be considered an "appropriate person" for the abuse alleged—three acts of sodomy in a bathroom between two special education students—I.M's Title IX claim against the District fails as a matter of law.

"What happened to [I.M.] is horrific. But Title IX precedent creates a 'high bar' to hold school districts liable for the unlawful acts of school employees." *M.E. v. Alvin Indep. Sch. Dist.*, 840 Fed. Appx. 773, 776 (5th Cir. 2020) (per curiam) (citing *Howell v. Austin Indep. Sch. Dist.*, 323 Fed. Appx. 294, 295 (5th Cir. 2009) (per curiam)).

## V. Conclusion

I.M.'s motion for partial summary judgment, (Docket Entry No. 36), is moot. The District's motion for summary judgment, (Docket Entry No. 35), is granted. Final judgment is entered separately.

SIGNED on November 19, 2021, at Houston, Texas.

                                                                             _____
                                                                             Lee H. Rosenthal
                                                                             Chief United States District Judge